IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| JASMINE SMITHWICK, <br><br> Plaintiff, <br><br> vs. <br><br> DEPUTY DETECTIVE JARED KULIK, ACSO #212; AND LIEUTENANT JOHN KEARNEY, ACSO #011; <br><br> Defendants, | 2:18-CV-01057-MJH |

OPINION AND ORDER

Plaintiff, Jasmine Smithwick ("Smithwick"), brings the within action pursuant to 42 U.S.C. § 1983 for violations of her First, Fourth, and Fourteenth Amendment Rights under the United States Constitution and state law claims for malicious prosecution, false arrest, invasion of privacy, assault, battery, and illegal detention against Defendants, Deputy Detective Jared Kulik ("Kulik") and Lieutenant John Kearney ("Kearney"). Kulik and Kearney have a filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 7). After careful consideration of Smithwick's Complaint (ECF No. 1), Kulik and Kearney's Motion to Dismiss and Brief in Support (ECF Nos. 7 and 8), Smithwick's Response in Opposition (ECF No. 11), the arguments of counsel, the Supplement submitted by Smithwick (ECF No. 14), and for the following reasons, Kulik and Kearney's Motion to Dismiss is granted.

I.  **Background**

On January 3, 2017, Kulik and Kearney arrested Smithwick for felony and misdemeanor possession of controlled substances during the execution of a bench warrant for her half-brother, Diaray Brown ("Brown"). (ECF No. 1 at ¶¶ 6 and 12). Smithwick shared a residence with Brown

and other family members. *Id.* at ¶ 2. During the search for Brown, Kulik encountered Smithwick and her boyfriend, Devon Johnson in Smithwick's second-floor bedroom. *Id.* at ¶ 14. Johnson was shirtless and wearing only "long-john" underwear. *Id.* at 14. While they continued to look for Brown within the house, officers brought Smithwick and Johnson downstairs. (ECF No. 7-3)[1]. The officers requested that the adult individuals identify themselves, but Johnson persisted in giving a false name. *Id.* The officers then detained Johnson in order to positively identify him. *Id.* As Johnson was being escorted to the Sheriff's van, Kearney instructed Kulik to retrieve pants and a shirt from the second-floor bedroom. *Id.* Kulik located the sweatpants directly next to the bed where Johnson had been lying. *Id.* Upon picking up the sweatpants, Kulik felt a bulge in the right front pocket. *Id.* The bulge contained heroin, cocaine, and $400 cash. *Id.* Kulik seized the items and brought the sweatpants to Mr. Johnson. *Id.* Mr. Johnson denied that the sweatpants belonged to him. *Id.* Kulik then brought the sweatpants back into the house, and Kearney asked the occupants about the bedroom where they were found. *Id.* When asked by Kearney, Smithwick admitted that the bedroom belonged to her. *Id.* Kearney then instructed a detective to arrest Smithwick. *Id.*

---

[1] In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may take into consideration "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" as well as "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, Inc., 998 F.2d 1192, 1196 (3d Cir.1993). Although a district court may not generally consider matters extraneous to pleadings when ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), it may consider documents integral to or explicitly relied upon in a complaint without converting the motion to dismiss into a motion for summary judgment. *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 (3d Cir.2010); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997) (emphasis added). Accordingly, the Court may take into consideration the affidavit of probable cause attached to the motion to dismiss without converting Defendants' motion into one for summary judgment in making this recommendation, as the authenticity of those documents are undisputed and based on Plaintiff's claims.

Both Johnson and Smithwick were charged with felony Possession with Intent to Deliver a Controlled Substance (35 P.S. § 780-113A30) and misdemeanor Possession of a Controlled Substance (35 P.S. § 780-113A16). (ECF No. 1 at ¶ 6 and ECF Nos. 7-2 and 7-4). The felony charges were later withdrawn, and both were arraigned on the remaining misdemeanor charges. *Id.* at ¶¶8-9. Johnson, who had several outstanding bench warrants, was also charged for false identification to law enforcement. (ECF No. 7-4).

Prior to a joint criminal trial, Smithwick orally joined Johnson's Motion to Suppress the evidence of the contents of the pants pocket, wherein they challenged the legitimacy of the search of the bedroom. (ECF No. 11-1). Judge Edward Borkowski denied that motion as to both criminal defendants. (ECF No. 14). Smithwick also filed an Omnibus Pre-Trial Motion to Dismiss which Judge Edward Borkowski granted, thereby dismissing all charges against her. (ECF No. 1 at ¶ 11 and ECF No. 14). Johnson subsequently pleaded guilty to possession of a controlled substance and false identification to a law enforcement officer. (ECF No. 7-4).

Defendants, Kulik and Kearney's, Motion to Dismiss argues that Smithwick fails to state a claim upon which relief can be granted in regards to her Section 1983 claims under the First, Fourth, and Fourteenth Amendments. Kulik and Kearney also argue that any federal claims should be dismissed, based upon qualified immunity. As to the pendent state law claims, Kulik and Kearney anticipate dismissal of the federal claims, and thus ask this Court to decline supplemental jurisdiction.

## II. Standard of Review

When reviewing a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint,

3

the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir.2009) (quoting *Graff v. Subbiah Cardiology Associates, Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir.2016) ("Although a reviewing court now affirmatively disregards a pleading's legal conclusions, it must still . . . assume all remaining factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them.") (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n. 1 (3d Cir.2014)).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion School District*, 132 F.3d 902, 906, n. 8 (3d Cir.1997). The primary question in deciding a motion to dismiss is not

whether the Plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir.2000). The purpose of a motion to dismiss is to "streamline [ ] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326–327, (1989).

Finally, if the court decides to grant a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the court must next decide whether leave to amend the complaint must be granted. The Court of Appeals has "instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 236 (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir.2002)).

### III. Discussion

#### A. Federal Claims

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C.A. § 1983. Count A of the Complaint asserts Section 1983 claims for deprivation of Smithwick's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution. (ECF No. 1). While Count A does not specify the types of Section1983 claims she is raising, Smithwick's Response Brief to the Motion to Dismiss clarifies that she is alleging claims

5

for malicious prosecution under the Fourth Amendment and deprivation of her First Amendment rights. (ECF No. 11).

### 1. First Amendment Claim

Smithwick argues that her arrest by Kulik and Kearney violated her First Amendment Rights, because she failed to implicate Johnson as the sole possessor of the subject sweatpants. Kulik and Kearny argue that that Smithwick has failed to state a claim for a retaliatory arrest, because her silence was not a constitutionally protected activity. "[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006) (citation omitted). To establish a First Amendment retaliation claim, a plaintiff "'must prove (1) that [s]he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation.'" *George v. Rehiel*, 738 F.3d 562, 585 (3d Cir. 2013) (quoting *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004)). Under *Hartman*, where the plaintiff alleges that the retaliation is *criminal prosecution*, causation requires a plaintiff to plead and prove the absence of probable cause. *Id.* at 265–66, 126 S.Ct. 1695.

Here, Smithwick's Complaint does not support a First Amendment retaliation claim. Smithwick contends the First Amendment protected her when she refused to admit or deny ownership of the sweatpants. Smithwick further contends that Kulik and Kearney arrested her for her silence and failure to implicate Johnson. However, Smithwick cites no authority to support her claim that a person maintains a constitutional right to not incriminate another person during the course of a criminal investigation and/or police interview. In fact, Courts have recognized limited First Amendment rights of a person *not to speak* to government-compelled speech,

however, such right is with respect to particular political or ideological messages. Courts have not recognized a First Amendment right of a person not to speak during a police interview. *See e.g. Alexander v. City of Round Rock*, 854 F.3d 298, 308-9 (5th Cir. 2017) (holding there is no clearly established First Amendment right not to answer an officer's questions during a traffic stop); *McFadyen v. Duke Univ.*, 786 F.Supp.2d 887, 949 (M.D.N.C. 2011); *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 645, 63 S.Ct.1178, 1189 (Murphy, J., concurring) (There is no right to refrain from speaking when "essential operations of government may require it for the preservation of an orderly society,—as in the case of compulsion to give evidence in court.") Therefore, Smithwick's averments of constitutionally protected speech lack merit. Her First Amendment claims within Count A of the Complaint fail.

Further, even if Smithwick's refusal to admit or deny ownership of the sweatpants was a First Amendment constitutionally protected activity, in order to prevail on her claim, Smithwick must prove that Kulik and Kearney responded with retaliation and that her protected activity caused the retaliation. *Rehiel*, 738 F.3d 562, 585. The causation element is defeated if she cannot plead or prove that Kulik and Kearney arrested her without probable cause. An officer has probable cause to arrest when "the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000)). Smithwick was arrested and charged for possession of a controlled substance under the following statutes:

> (a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

> (16) Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or

pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

\*\*\*

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(16) and (a)(30). For a possessory crime, the Commonwealth may meet its burden by showing actual possession, constructive possession, or joint constructive possession. *Com. v. Thompson*, 286 Pa.Super. 31, 428 A.2d 223, 224 (1981). Under Pennsylvania law, "Constructive possession" is "the ability to exercise a conscious dominion over" contraband. *Com. v. Vargas*, 108 A.3d 858, 868 (Pa.Super. 2014). Constructive possession often arises when police find contraband somewhere other than on the defendant's person. *Com. v. Hall*, 199 A.3d 954 (Pa. Super. Ct. 2018). Constructive possession requires proof that the defendant had knowledge of the existence and location of the item. *Thompson*, 428 A.2d at 224. However, the Commonwealth may prove such knowledge circumstantially. *Hall*, 199 A.3d at 954. That is, it may prove that the defendant had knowledge of the existence and location of the items at issue "from examination of the totality of the circumstances surrounding the case." *Id*. Since determining whether a defendant had constructive possession of contraband is not amenable to "bright line" tests, the finder of fact may infer an intent to maintain a conscious dominion from the totality of the circumstances. *Com. v. Macolino*, 469 A.2d 132, 134 (Pa. 1983) (citations omitted). "An accused may be charged with the knowledge of the location of the contraband, which is essential to the proof of an intent to exercise control, if the contraband is found in places peculiarly within the control of the accused." See *Com. v. Maurer*, 361 A.2d 356 (Pa. Super. Ct. 1976) and *Com. v. DeCampli*, 364 A.2d 454 (Pa. Super. 1976). Exclusive control of a dwelling may be inferred from proof that the accused is

the sole occupant or tenant of the place in which contraband is found. *DeCampli*, 364 A.2d at 456. In *Maurer* and *DeCampli*, the court indicated that a bedroom, and in particular the dresser in it, is a more private place with limited access and usually subject to the exclusive control of the owner or lessee of the premises. *Id.*

In *Macolino*, the Pennsylvania Supreme Court held "constructive possession can be found in one defendant when both the husband and wife have equal access to an area where the illegal substance or contraband is found." *Id.* at 135. Likewise, in *Com. v. Mudrick*, 507 A.2d 1212 (1986), the Pennsylvania Supreme Court held that "even absent a marital relationship constructive possession may be found in either or both actors if contraband is found in an area of joint control and equal access." *Id.* at 1214. In *Mudrick*, paramours lived in the residence and shared a bedroom. Therefore, the *Mudrick* Court held that the factfinder could find joint control over the bedroom and equal access to the area where the cocaine was found. *Id.* Accordingly, given the totality of the circumstances, the jury could find constructive possession. *Id.*

*Com. v. Carroll*, 807 A.2d 819 (Pa. 1986) presents facts most analogous to this case. In *Carroll*, officers found heroin in the pocket of a pair of woman's jeans in the hotel room occupied by the defendant, his wife, and his teenage stepdaughter. *Id.* at 301. Officers found the jeans in a laundry bag next to the beds. *Id.* The occupants denied ownership of the jeans. *Id.* The husband was subsequently charged with possession based upon these facts. *Id.* The Pennsylvania Supreme Court held that under the evidence, a jury could find a conscious dominion by the defendant husband from which constructive possession could be inferred. *Id.* at 303.

Here, at the time of Smithwick's arrest, Kulik and Kearney only had to have probable cause that Smithwick constructively possessed the contraband; however, they did not need sufficient evidence for a conviction. When the officers encountered Smithwick and Johnson, both were

9

lying in bed together with a pair of sweatpants in plain view. (ECF No. 1 at ¶ 14). Johnson was laying shirtless and in long underwear. *Id*. Smithwick and other occupants of the residence acknowledged that the bedroom was Smithwick's bedroom. (ECF No. 7-3). Johnson denied that the sweatpants were his. *Id*. Therefore, Kulik and Kearney encountered contraband in Smithwick's bedroom, an area that she presumably controlled. Further, with Johnson's denial of ownership of the pants, Smithwick was the only party who had possession and control over them in her bedroom. On these facts, as alleged in the Complaint and as contained in the Affidavit of Probable Cause and in the totality of the circumstances, Kulik and Kearney had sufficient basis to believe that Smithwick had constructive possession of the sweatpants and contraband. Thus, the officers had probable cause to arrest Smithwick for the offense of possession in violation of 35 P.S. § 780-113(a)(16) and (a)(30). Since Kulik and Kearney had probable cause to arrest Smithwick, in addition to Smithwick's failure to plead a First Amendment violation, her First Amendment retaliatory arrest claim also fails to sufficiently establish that her arrest was without probable cause.

Accordingly, Kulik and Kearney's Motion to Dismiss, as regards the First Amendment claims in Count A, is granted. Based upon the above analysis, any amendment of said claim would be futile.

### 2. Fourth Amendment Claim

As above, Smithwick's Fourth Amendment, malicious prosecution, claim turns on whether Kulik and Kearney had probable cause to initiate the criminal proceeding against her. To prove malicious prosecution under Section 1983, a plaintiff must show that:

> (1) the defendants initiated a criminal proceeding;
> (2) the criminal proceeding ended in plaintiff's favor;
> (3) **the proceeding was initiated without probable cause;**

> (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and
> (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (emphasis added). Smithwick argues that Kulik's Affidavit of Probable Cause contains "omissions of crucial facts" that would have defeated a finding of probable cause by before a magistrate.

In evaluating whether an officer's affidavit establishes probable cause, the court focuses its analysis on whether the officer "'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for a warrant.'" *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997). As set forth by the Third Circuit:

> we must concentrate on two elements: first, whether "the officer, with at least a reckless disregard for the truth, 'made false statements or omissions that create[d] a falsehood in applying for a warrant,' and second, whether those assertions or omissions were 'material, or necessary, to the finding of probable cause.'"

*Andrews*, 853 F.3d at 697 (quoting *Dempsey*, 834 F.3d at 468–69) (other citations omitted). As regards the first element, the Third Circuit has explained that "(1) omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know; and (2) assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting." *Wilson*, 212 F.3d at 783. For the second element, the materiality of the omissions is determined by "excis[ing] the offending inaccuracies and insert[ing] the facts recklessly omitted, and then determin[ing] whether or not the 'corrected' warrant affidavit would establish probable cause." *Wilson*, 212 F.3d at 789, citing *Sherwood*, 113 F.3d at 399.

11

Here, Smithwick contends that Kulik recklessly omitted the following from his Affidavit of Probable Cause: 1) Smithwick was not suspected of any crime during execution of the bench warrant; 2) Smithwick was cooperative; 3) Smithwick was not under the influence of any drugs at the time she was detained and interrogated; 4) None of the items from the sweatpants were tested for DNA or fingerprints; 5) Any connection between Smithwick and drugs of any nature; 6) Kulik believed the drugs belong to Johnson; 7) Johnson's physical characteristics comported to the size of male sweatpants; 8) Evidence that Smithwick knew the sweatpants contained drugs; and 9) Evidence that Smithwick intended to access the sweatpants. (ECF No. 1 at ¶¶14-20 and 24-30).

To determine whether information was recklessly omitted, the Court asks whether the officer withheld "a fact in his ken that '[a]ny reasonable person would have known that this was the kind of thing the judge would wish to know.'" *Dempsey*, 834 F.3d at 470 (quoting *Wilson*, 212 F.3d at 788) (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993))).

> Inherent in this inquiry are two requirements. First, the officer must have knowledge of the information alleged to have been recklessly omitted. For this reason, we look only to the information available to the officer at the time of the swearing of the affidavit of probable cause. Second, the information must be relevant to the existence of probable cause. The relevance requirement "ensures that a police officer does not 'make unilateral decisions about the materiality of information'" by enabling a magistrate to decide independently, on the basis of an affidavit containing all relevant information, whether the circumstances give rise to probable cause. [*Reedy v. Evanson*, 615 F.3d 197,] 213 [(3d Cir. 2010)] (quoting *Wilson*, 212 F.3d at 787). At the same time, however, it recognizes that for practical reasons courts simply "cannot demand that police officers relate the entire history of events leading up to a warrant application." *Wilson*, 212 F.3d at 787.

*Dempsey*, 834 F.3d at 471. "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

Reckless omissions only pertain to facts. *Wilson*, 212 F.3d at 783. That Smithwick's cooperated with the officers is not relevant to whether she constructively possessed the contraband. Furthermore, constructive possession, as defined above, does not require physical evidence such as DNA, fingerprints, or evidence of drug use. As to Johnson's physical characteristics relative to the male sweatpants, the Affidavit of Probable Cause did not omit the fact that the sweatpants were male. Finally, as to Smithwick's position that there was no indication in the Affidavit of Probable Cause that Smithwick intended to access the sweatpants, or that she had connection to drugs of any nature, or that she knew the sweatpants contained drugs, constructive possession only requires that she had knowledge of the existence and location of the item; such knowledge can be proven circumstantially. *Thompson*, 428 A.2d at 224; *Hall*, 199 A.3d at 954. These facts, in the circumstances of this case were not of a nature that a judge would want to know. Thus, they were not reckless omissions. At the time of the arrest, Kulik and Kearney knew that Smithwick's bedroom belonged to Smithwick, that the sweatpants were in the bedroom in plain site, and that Johnson denied ownership of the sweatpants. These facts were sufficient at the time of her arrest to establish probable cause to charge Smithwick, based upon constructive possession. Accordingly, none of the allegedly omitted facts, as pleaded in the complaint, were recklessly omitted.

Furthermore, even if all of the omitted facts had been included in the Affidavit of Probable Cause, they were not material to alter the outcome of the finding of probable cause. To determine materiality, the Court determines whether any omitted facts and false assertions would establish probable cause. *See Wilson*, 212 F.3d at 789. Where there is ample uncontested evidence to support probable cause, the Third Circuit has affirmed that district court's ruling on probable cause as a matter of law on a motion to dismiss. *Villarosa v. N. Coventry Twp.*, 711 F.

App'x 92, 96 (3d Cir. 2017). Following careful consideration of the totality of the Affidavit of Probable cause and then including the allegedly omitted facts, this Court finds that a neutral, detached magistrate, reviewing the affidavit with the omitted facts in a common-sense manner and considering all the circumstances, would conclude that probable cause to arrest Smithwick had been established in light of her possession of the bedroom, the location of the contraband, and Mr. Johnson's denial of ownership. Thus, analysis of the Affidavit of Probable Cause, along with the additional information, does not sufficiently establish an absence of probable cause. The omissions were not material or necessary to the finding of probable cause. Assuming Smithwick's allegations are true, an affidavit which would have contained all of her additional omitted facts, does not alter that there was a "fair probability" that a crime occurred and that Smithwick was the perpetrator of the crime. Kulik and Kearney had probable cause to arrest Smithwick and to initiate a prosecution for the charged offenses, based upon constructive possession. Therefore, Smithwick cannot establish an essential element of her claim for malicious prosecution under Section 1983, i.e. the absence of probable cause.

Accordingly, Kulik and Kearney's Motion to Dismiss, as regards Smithwick's Fourth Amendment claims in Count A, is granted. Based upon the above analysis, the Court deems any amendment futile.

### 3. Qualified Immunity

Kulik and Kearney also argue that qualified immunity bars the federal claims in Count A the Complaint. Qualified immunity is an entitlement not to stand trial or face other burdens of litigation. It is an immunity from suit rather than a mere defense to liability. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). Because the individual defendants assert that they are entitled to qualified immunity, "plaintiff bears the initial burden of showing that the

[individual] defendant's conduct violated some clearly established statutory or constitutional right." *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997).

Claims of qualified immunity are evaluated using a two-step process. *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir.2001). First, the court must determine whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation by the defendants. *Bennett*, 74 F.3d at 136. If no such violation is established, then the inquiry ends and the officer is entitled to qualified immunity. *Id.* Here, Smithwick failed to plead a First Amendment violation, and she failed to show an absence of probable cause under all federal claims, and thus she does not establish any constitutional violation by Kulik and Kearney. Thus, Kulik and Kearney are entitled to qualified immunity. As such, Kulik and Kearney's Motion to Dismiss, based upon qualified immunity, is granted.

### B. State Law Claims

#### 1. Malicious Prosecution

In Pennsylvania, a plaintiff alleging common law malicious prosecution must show (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice. *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000). Because the Court has determined that the officers had probable cause to arrest, Smithwick cannot maintain a claim for state law malicious prosecution claim.

Accordingly, Kulik and Kearney's Motion to Dismiss, as regards the state law malicious prosecution claims in Count B, is granted. Based upon the above analysis, the Court deems any amendment futile.

## 2. False Arrest and Illegal Detention

"[F]alse arrest and false imprisonment are essentially the same claim." *Olender v. Twp. of Bensalem*, 32 F.Supp.2d 775, 791 (E.D.Pa.) (citing Pennsylvania cases), aff'd, 202 F.3d 254 (3d Cir.1999). There are two elements to a claim of false imprisonment under Pennsylvania law: "(1) the detention of another person, and (2) the unlawfulness of such detention." *Renk*, 641 A.2d at 293. In Pennsylvania, a false arrest is defined as "1) an arrest made without probable cause or 2) an arrest made by a person without privilege to do so." *Russoli v. Salisbury Twp.*, 126 F.Supp.2d 821, 869 (E.D.Pa.2000). False arrest and false imprisonment claims against police officers turn on whether probable cause exists. *Id.* at 869–70. Indeed, "Pennsylvania state law false arrest claims and federal constitutional false arrest claims are co-extensive as to both elements of proof and elements of damages." *Id.* at 869. Because the Court has disposed of the probable cause element above, Smithwick cannot maintain claims for state law false arrest and illegal detention.

Accordingly, Kulik and Kearney's Motion to Dismiss, as regards the state law false arrest and illegal detention claims in Count B, is granted. Based upon the above analysis, the Court deems any amendment futile.

## 3. Invasion of Privacy, Assault, and Battery

Smithwick's remaining three state-law causes of action, Invasion of Privacy, Assault, and Battery, do not present federal questions. When federal question jurisdiction ceases to exist, a district court may, in its discretion, decline to exercise supplemental jurisdiction over the remaining claims. See 28 U.S.C. § 1367(c)(3); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction over state-law claims] after dismissing every claim over which it had original

16

jurisdiction is purely discretionary." (citation omitted) (emphasis added)). More specifically, a court "must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) (emphasis added); *see also Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597, 651 (E.D. Pa. 2018). No such affirmative justification compels supplemental jurisdiction here.

Accordingly, Smithwick's remaining claims will be dismissed without prejudice to re-file in state court.

## ORDER

AND NOW, this 2nd day of April, 2019, after careful consideration of Smithwick's Complaint (ECF No. 1), Kulik and Kearney's Motion to Dismiss and Brief in Support (ECF Nos. 7 and 8), Smithwick's Response in Opposition (ECF No. 11), the arguments of counsel, the Supplement submitted by Smithwick (ECF No. 14), and for the foregoing reasons, Kulik and Kearney's Motion to Dismiss is granted. Count A is dismissed. Smithwick's claims for malicious prosecution, false arrest, and illegal detention, within Count B, are dismissed. Any amendment to those claims is deemed futile. The Court declines to exercise jurisdiction over the remaining Count B claims of Invasion of Privacy, Assault, and Battery. Therefore those claims are dismissed without prejudice to Plaintiff's recourse to re-file in state court.

BY THE COURT:

Marilyn J. Horan
United States District Judge